UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LYNNE CALLIGARO<br><br>Plaintiff,<br><br>v.<br><br>DELOITTE CONSULTING LLP<br><br>Defendant. | Case No. 1:19-cv-1456 |

## COMPLAINT

COMES NOW PLAINTIFF Lynne Calligaro, by and through the undersigned counsel, and for her Complaint against Deloitte Consulting LLP ("Deloitte" or "Defendant"), alleges as follows:

1. Plaintiff brings this action against Defendant for damages arising out of violations of t Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, because Defendant discriminated against Plaintiff because of her sex and, as a result, failed to pay her the amounts paid to similarly-situated men performing substantially similar jobs under similar working conditions, that required substantially equal skill, effort, and responsibility.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331, as the claims involve questions of federal law.

3. This Court has personal jurisdiction over Defendant because Defendant operates an office out of Arlington, Virginia.

4. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, because the acts and omissions complained of herein occurred within this judicial district. Defendant also resides within this judicial district.

1

## PARTIES

5. Plaintiff is a resident of Alexandria, Virginia, and worked in various positions at Defendant.

6. Plaintiff, during her employment tenure with Defendant, was assigned to and worked primarily out of Defendant's office in Arlington, Virginia.

7. Plaintiff was employed by Defendant from May 2009 until September 2019.

8. Defendant is a multinational professional services firm that provides audit, tax, advisory, and consulting services.

9. Defendant operates offices in many different locations around the world, including but not limited to an office in Arlington, Virginia.

10. At all times relevant to the claims contained herein, Defendant was an "employer" within the meaning of 42 U.S.C. §2000e(b).

11. At all times relevant to the claims contained herein, Plaintiff was an "employee" within the meaning of 42 U.S.C. § 2000e(f).

12. Defendant is engaged in an industry affecting commerce and had greater than fifteen during the relevant time periods in each of twenty or more calendar weeks in the current or preceding year, within the meaning of 42 U.S.C. § 2000e(b).

## STATEMENT OF FACTS

**Background**

13. On or about May 9, 2009, Plaintiff began employment with Defendant as a Manager and received a base salary of $101,500, with the potential to earn bonuses.

14. Prior to being hired by Defendant, Plaintiff had significant experience at other consulting firms.

15. At the time that she was hired, Plaintiff held two (2) Master's degrees relevant to the consulting field.

16. In 2012, Defendant promoted Plaintiff to Specialist Leader.

17. By 2014, Plaintiff's base salary had increased to $143,543, with the potential to earn bonuses.

18. In the years 2011, 2012, 2013, and 2014, Plaintiff received annual performance ratings of "1" which is the highest possible rating on Defendant's evaluation scale. In 2015, Plaintiff received a performance rating of "2."

19. In 2014, Plaintiff requested that, Tony DeMarinis, a Managing Director at Defendant, investigate whether Plaintiff was being paid a comparable salary to that of her male peers.

20. Mr. DeMarinis and Courtney Henry, a Talent Business Advisor at Defendant, investigated and determined that Plaintiff was not being compensated with a base salary comparable to Plaintiff's male colleagues.

21. Male employees, who were Plaintiff's peers, and received a rating of "1," were receiving at least $200,000 or more.

22. Mr. DeMarinis and Managing Director Tracy Haugen negotiated an off-cycle salary increase for Plaintiff.

23. In December 2014, the off-cycle salary increase was approved by Sean Morris, a Partner at Defendant.

24. Mr. Morris acknowledged to Plaintiff that Defendant considered Plaintiff to be a top performer, and that her base pay should be increased considerably.

25. Mr. Morris informed Plaintiff that Defendant could not, "all at once", achieve a full increase in Plaintiff's base salary.

26. Mr. Morris agreed to increase Plaintiff's base pay by $20,000, and promised that, in 2015, Defendant would again adjust Plaintiff's salary to a more appropriate level.

27. In December 2014, Plaintiff received a $20,000 increase to her base salary.

28. Defendant, despite previous promise, did not make an additional salary adjustment to Plaintiff's base salary in 2015.

**Plaintiff's Salary History**

29. Plaintiff was considered a top performer with Defendant during the years 2011-2015.

30. In 2014, Plaintiff received a "1" rating for performance; this was Plaintiff's fourth "1" rating.

31. Despite Plaintiff's high performance, her salary remained among the lowest in the salary band for her performance peer group in 2014.

32. Plaintiff's compensation was not consistent with Defendant's characterizations of Plaintiff as a "top performer" and "highly valued."

33. Plaintiff's compensation was not consistent with Defendant's own guidelines, criteria, and methods for assessing and setting compensation.

34. Plaintiff was never provided any explanation for the decisions related to determining her salary.

35. At the time of her termination, in September 2019, Plaintiff's base salary was $171,400.

36. At the time of termination in September 2019, Defendant paid Plaintiff less than male employees who performed substantially similar duties.

**Defendant Paid Plaintiff Less than her Male Colleagues**

37. Plaintiff's primary job responsibilities included, but were not limited to, writing proposals, selling new engagements to clients, managing projects, advising clients, leading teams to execute work, monitoring budgets, mentoring junior staff, and building eminence in her specialized field within consulting.

38. Plaintiff had comparable education, experience, and training to male employees in her peer group at Defendant.

39. Plaintiff performed substantially similar work to that of the work performed by male employees in her peer group at Defendant.

40. In 2014, Jeff Birch, a male Specialist Leader at Defendant, was assigned to the same geographic location as Plaintiff – the Arlington, Virginia office.

41. While in the Arlington office, Mr. Birch and Plaintiff were part of Defendant's Talent, Performance, & Rewards service line, in the Human Capital service area, within Defendant's Federal Consulting Practice.

42. In 2014, Mr. Birch worked on similar projects to Plaintiff that required substantially similar experience, skill, effort, and responsibility.

43. In 2014, Mr. Birch and Plaintiff performed under similar working conditions. Primarily, Mr. Birch and Plaintiff spent the majority of working hours at the client's site, with additional hours spent at Defendant's Arlington, Virginia office.

44. In 2014, Mr. Birch and Plaintiff both led large-scale training projects for Defendant's important clients.

45. In 2014, Plaintiff's account at Defendant was with the Military Health System.

46. In 2014, Mr. Birch's account at Defendant was with the United States Postal Service.

47. In 2014, as well as in other years, Mr. Birch and Plaintiff were compared to one another during the annual performance review process.

48. In 2014, as well as in other subsequent years, through September 2019, Plaintiff was compared to other males during the annual performance review process.

49. Upon information and belief, Mr. Birch did not receive a "1" performance rating in 2014.

50. For the years, 2014-2019, Defendant paid Plaintiff less than the amounts paid to Mr. Birch for performing substantially similar work.

51. Eric Vazquez, a Specialist Leader in the Human Capital service area, worked out of Defendant's Arlington, Virginia office from 2015-2019.

52. For the years 2015-2019, Plaintiff and Mr. Vazquez performed under similar working conditions.

53. For the years 2015-2019, Plaintiff and Mr. Vazquez were in the same performance peer group.

54. For the years 2015-2019, Plaintiff and Mr. Vazquez performed the same or similar duties including, but not limited to, project management, leading teams, and writing proposals.

55. For the years 2015-2019, Defendant paid Plaintiff less than the amounts paid to Mr. Vazquez for performing substantially similar work.

56. Brian O'Connell, a Specialist Leader in the Human Capital service area, worked out of Defendant's Arlington, Virginia office from 2014-2019.

57. For the years, 2014-2019, Plaintiff and Mr. O'Connell performed under the same or similar working conditions.

58. For the years 2014-2019, Plaintiff and Mr. Mr. O'Connell were in the same performance peer group.

59. For the years, 2014-2019, Plaintiff and Mr. O'Connell performed the same or similar duties, including, but not limited to, project management, leading teams, and writing proposals.

60. For the years 2014-2019, Defendant paid Plaintiff less than the amounts paid to Mr. O'Connell for performing substantially similar work.

61. Matt Pietrewski, a Specialist Leader in the Human Capital service area, worked out of Defendant's Arlington, Virginia office from 2014-2018.

62. For the years 2014-2018, Plaintiff and Mr. Pietrewski performed under the same or similar working conditions.

63. For the years 2014-2018, Plaintiff and Mr. Pietrewski were in the same performance peer group.

64. For the years 2014-2018, Plaintiff and Mr. Pietrewski performed the same or similar duties, including, but not limited to, project management, leading teams, and writing proposals.

65. For the years 2014-2018, Defendant paid Plaintiff less than amounts paid to Mr. Pietrewski for performing substantially similar work.

66. Deloitte, in 2016, 2017, 2018, and 2019, paid Plaintiff less than the salaries paid to Mr. Birch Mr. O'Connell, Mr. Vazquez, and Mr. Pietrewski for performing substantially similar work.

**Plaintiff Complains about Pay Disparity and Discrimination**

67. In March 2019, Plaintiff requested that Donald Brady, her counselor at Defendant, inquire into the overall fairness and clear discrepancy with Plaintiff's salary, in comparison with her similarly qualified male counterparts.

68. During that time, Plaintiff inquired into the existence of the formal complaint process to address concerns about pay disparity between Plaintiff and male employees, as she believed she was being paid less because she is a woman. In response, Mr. Brady indicated he would investigate the matter; however, Plaintiff was never provided with a response regarding same.

69. Additionally, in early March 2019, Plaintiff made multiple requests to Defendant's Talent Business Advisors and Talent Relations for internal information relating to the 2014 complaint she had made regarding her salary.

70. In early March 2019 Plaintiff also raised concerns about not receiving the promised additional salary adjustment in 2015 nor at any time since.

71. At no point has Defendant explained why Plaintiff did not receive the promised additional salary adjustment.

72. Defendant did not provide any explanation about the pay disparity between Plaintiff and her similarly situated male colleagues.

73. Plaintiff continued in April 2019 to make complaints about the disparity in pay between her and similarly situated male colleagues.

74. On or about April 2, 2019, Plaintiff contacted Andrea Borde-Dalwadi and Rebecca Wiltgen, Talent Business Advisors at Defendant, and asked for all information relating to the 2014 salary adjustment decision.

75. On or about April 2, 2019, Plaintiff also requested her personnel file.

76. Plaintiff informed Ms. Borde-Dalwadi and Ms. Wiltgen of her belief that gender discrimination occurred in 2014.

77. Plaintiff also discussed the Defendant's failure to provide Plaintiff with the promised additional salary adjustment in subsequent years that resulted in an inexplicable pay disparity between Plaintiff and similarly situated male employees.

78. Plaintiff requested information on Defendant's policy for pay disparities based on sex.

79. Defendant did not address Plaintiff's questions.

80. Defendant did not provide to Plaintiff the requested documentation.

81. Defendant did not provide Plaintiff's personnel file.

**Exhaustion of Administrative Remedies**

82. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 7, 2019.

83. That Charge alleged discrimination based on sex with respect to her pay.

84. On July 8, 2020 Plaintiff, through counsel, received a Notice of Right to Sue with respect to her Charge of Discrimination.

85. All conditions precedent to the institution of this lawsuit have been fulfilled.

86. Plaintiff has exhausted her administrative remedies as required by 42 U.S.C. § 2000e, *et seq.*

87. This matter is timely filed within ninety (90) days of Plaintiff's receipt of her Notice of Right to Sue regarding her Charge of Discrimination from the EEOC.

## COUNT I
### Discrimination on the Basis of Sex
### [Violation of Title VII, 42 U.S.C. § 2000e]

88. Plaintiff incorporates, by reference, every allegation asserted in this Complaint as if fully set forth herein.

89. Defendant employed Plaintiff and similarly situated male employees at Defendant's Arlington, Virginia office.

90. The work performed by Plaintiff and similarly situated male employees required substantially equal skill, effort, and responsibility.

91. Plaintiff and similarly situated male employees performed their jobs under similar working conditions.

92. Plaintiff was paid a lower wage than the male employees performing substantially similar work.

93. The discrepancy in pay, between male employees and Plaintiff, was not due to seniority, or a system that measures earnings by quantity or quality of production.

94. The differential in pay between male employees and Plaintiff was not based on any other factor other than sex.

95. Defendant was aware of this pay differential, as Ms. Calligaro petitioned for higher wages in 2014.

96. Defendant caused, attempted to cause, contributed to, or caused the continuation of the wage rate discrimination based on sex.

97. Defendant's acts and omissions in causing the differential in pay between male employees and Plaintiff were willful and purposeful.

98. As a direct, proximate, and foreseeable result of Defendant's unlawful actions, Plaintiff has suffered a loss of wages and salary, compensation, employment benefits, and career path opportunities in an amount to be proved at trial.

99. Because of the continuous nature of Defendant's unlawful discriminatory conduct, Ms. Calligaro can recover back pay for the two years prior to the filing of her Charge of Discrimination, which entitle her to damages from November 7, 2017 to the time of her termination in September 2019.

100. As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

## JURY DEMAND

Plaintiff demands a trial by jury for those issues which are triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a. Entry of judgment in favor of Plaintiff and against Defendant on Count I of the Complaint;

  b.  Award of wages and benefits denied or lost to Plaintiff as a result of Defendant's unlawful actions, in an amount to be proven at trial;

  c.  Award of punitive damages for Plaintiff against Defendant;

  d.  Award of reasonable attorneys' fees and costs for Plaintiff against Defendant;

  e.  Award of prejudgment interests and costs for Plaintiff as appropriate;

  f.  Any other relief that this Court deems equitable, appropriate, and just.


DATED: October 6, 2020    Respectfully,

                /s/
              Joshua Erlich (VA Bar No. 81298)
              Davia Craumer (VA Bar No. 87426)
              Katherine L. Herrmann (VA Bar No. 83203)
              **The Erlich Law Office, PLLC**
              2111 Wilson Blvd
              Ste. 700
              Arlington, VA, 22201
              Tel: (703) 791-9087
              Fax: (703) 722-8114
              Email: jerlich@erlichlawoffice.com
                  dcraumer@erlichlawoffice.com
                  kherrmann@erlichlawoffice.com